ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* MITCHELL.

Opinion delivered November 23, 1914.

1. RAILROADS—DUTY TO MAINTAIN LOOKOUT—HANDCARS.—Kirby's Digest, § 6607, as amended by Act 284, page 275, Acts 1911, requiring railroads to maintain a lookout in the operation of trains, applies only to the operation of trains and not to handcars.

2.  RAILROADS—OPERATION OF HANDCARS—LOOKOUT—PUBLIC CROSSING.—
    It is the duty, aside from special statutory enactment, for the
    operators of a handcar on a railway track, to maintain a lookout
    when approaching a public crossing.

3.  RAILROADS—OPERATION OF HANDCAR—NEGLIGENCE—LIABILITY—LOOK-
    OUT.—A railroad company will be liable for the negligent opera-
    tion of a handcar, for striking plaintiff at a public crossing,
    if the operators of the handcar failed to keep a lookout for per-
    sons crossing the track, or if they failed to use reasonable care in
    stopping the same, unless plaintiff was guilty of contributory negli-
    gence in failing to stop, look and listen upon approaching the
    crossing.

4.  ACCORD AND SATISFACTION—PART PERFORMANCE.—Accord and part
    performance do not constitute a satisfaction.

5.  RELEASE—ACCORD AND SATISFACTION.—Plaintiff held a claim for
    damages for personal injuries against defendant railway company,
    and executed an agreement of release for a certain consideration.
    *Held*, the release was not binding as an accord and satisfaction,
    where defendant only performed its side of the agreement in part,
    and made only a tender of the other parts thereof.

6.  ACCORD AND SATISFACTION—CONTRACT OF COMPROMISE—PARTIAL PER-
    FORMANCE.—Performance of part and readiness to perform the
    balance of an agreement to compromise, or performance in part
    and tender of performance of the balance, are insufficient to con-
    stitute a satisfaction, provided that one party to the agreement
    may take such action or accept such benefits, as to place it out of
    his power to abandon the contract of compromise, in which event
    his remedy is to sue on the agreement of compromise for damages
    for the part that remained unperformed.

7.  TRIAL—ORDER OF TRIAL—REQUESTS FOR INSTRUCTIONS—DISCRETION OF
    COURT.—Under Kirby's Digest, § 6196, providing for the order of
    trial, a trial judge has the discretion to require that the instruc-
    tions be settled before the argument begins, and as a means to
    this end, may require any special request for instructions to be
    made before the opening of the argument; but this discretion is
    not an absolute one, for questions might be raised in the argument
    which would necessitate additional instructions by the court.

8.  TRIAL—REQUEST FOR INSTRUCTION AFTER ARGUMENT.—In an action
    for damages for personal injuries, the question of the binding effect
    of a release, executed by the plaintiff, was in issue. During the
    argument a controversy arose as to appellant's admission of lia-
    bility by offering to compromise with the plaintiff. *Held*, the ap-
    pellant was entitled to an instruction on that issue, at that stage
    of the trial, and a refusal to grant such instruction will be held
    prejudicial error.

9.   EVIDENCE—RECORDS OF PUBLIC SERVICE CORPORATIONS—VERITY.—It will
     not be held as a matter of law that the records of a railway com-
     pany as to the movement of its trains are correct, in the absence
     of any evidence that the records were not changed or tampered
     with.

Appeal from Prairie Circuit Court, Southern District; *Eugene Lankford*, Judge; reversed.

### STATEMENT BY THE COURT.

Appellee sued to recover damages to compensate an injury sustained by him and at the trial testified that on the 3d day of January, 1914, while proceeding with due care to drive his team across the appellant's road on a public highway the employees of appellant in charge of a motor car negligently ran into appellee's wagon in which he was riding, threw him out of it and seriously injured him.

Appellant admitted that its handcar struck the appellee's wagon, but alleged that the collision was occasioned by reason of the failure of appellee to stop, look or listen before undertaking to cross the track; and alleged, and offered proof tending to show, that its employees were proceeding with due care, and further that had appellee stopped and looked or listened he could and would have seen the approaching car in time to have avoided the collision, whereas its employees operating the handcar were unaware of appellee's proximity to the track and his consequent danger until the car was too near the wagon to avoid the collision.

Appellee undertook to excuse his failure to stop, look and listen by testifying that a freight train passed immediately in front of the handcar, and that the train made so much noise that he could not hear the car, and that he did not know that the handcar was following immediately behind the train and, moreover, that the collision occurred just about dark; and there were no lights of any kind on the handcar.

The proof showed that some time after the injury complained of was inflicted, an agreement was entered into whereby appellee agreed to accept the sum of $50

in satisfaction of all damages which he had sustained, and a draft for that amount was drawn in favor of and delivered to appellee. This draft was never cashed, nor presented for payment, although the proof showed that it would have been cashed had it been presented. A written release was signed, but the proof does not show that appellee's attorneys were parties to or were advised of it and on the very day of its execution this suit was brought. It is admitted that, in addition to the consideration of $50 evidenced by the draft, the railway company agreed to pay appellee's lawyer, and it was stated by the claim agent at the time that as no suit had been brought the fee would probably not exceed $25, but the agreement was that the railway company should pay the fee, whatever it might be. There was no proof that any representative of the railway company ever conferred with appellee's attorney in regard to the fee, and no understanding was ever had in that behalf. The appellant tendered the $50 recited in the release, and undertook to excuse its failure to pay the attorney's fee by saying that it knew it was useless to undertake to settle with the attorney after the institution of the suit.

Among other instructions the court gave the following:

"2. It is the duty of the servants of the railroad company operating a car to keep a lookout for people crossing the tracks, and if they fail to do that or if they fail to use reasonable care in stopping the train or car, they would be guilty of negligence and the plaintiff should recover, unless you find that he was guilty of contributory negligence and neglected to watch out for approaching cars. It is the duty of any one crossing the tracks to stop, look and listen to see if car or train is coming."

The court refused to give the following instructions at the request of the appellant:

"2. The jury is instructed that if they find from the evidence that the plaintiff and the defendant entered

into an agreement to settle and compromise this cause and that such agreement was reduced to writing and that the defendant performed and was ready and willing to carry its agreement to completion by paying the draft and such other agreement as it would in reference to the settlement, then your verdict must be for the defendant.''

''3. The jury are instructed that an offer to settle this suit by the defendant is not an admission of its liabilities and in ascertaining the fact as to whether the defendant is liable to the plaintiff for damages you can not take into consideration any action or statement made by the claim agent in reference to a settlement or a compromise of the case in fixing the original liability of the defendant.''

''4. You are instructed that the railway company, on account of the nature of its business, keeps a record of the movement of all of its trains, and if you find that the original record of the movement of its trains had been adduced in evidence, you must accept it as you would any other written evidence made at the time of the transaction and unless you have reason to believe the record of the trains had been changed or tampered with, you must find it to give the correct movements of the trains.''

Other facts will be stated in the opinion.

Appellee recovered a substantial judgment, and this appeal has been duly prosecuted.

*S. H. West* and *J. C. Hawthorne*, for appellant.

1. Neither section 6607, Kirby's Digest, nor the act of 1911, amendatory thereof, is broad enough to include persons running handcars, but refer to persons running trains only. The court's second instruction was given on the wrong theory, and was prejudicial.

2. The court should have directed a verdict for the appellant. There was no proof tending to show that the peril of appellee was discovered in time to avert the accident. In view of the record of the train sheets, appel-

lee's testimony that he waited until a freight train passed, etc., must be treated as a fabrication; but if that be accepted as true, there is nothing unusual in a hand-car following immediately after a train, and nothing in the ordinary handling of handcars to prevent them from so doing. 69 Ark. 134; 78 Ark. 55; 76 Ark. 224; 101 Ark. 315; 105 Ark. 180.

3. Instruction 2, requested by appellant, should have been given. It was asked upon the theory that a settlement had been made. The compromise was complete when the written agreement was executed. The fact that the draft was not presented or paid did not authorize the appellee to disregard it. The settlement, having been voluntarily entered into, it is conclusive, in the absence of proof of fraud or duress. 74 Ark. 270; 75 Ark. 276; 44 Ark. 556; 62 Ark. 342; 88 Ark. 362; 89 Ark. 385.

4. Certainly the third instruction requested by appellant should have been given. There was no inconsistency between that instruction and the second. If there was a compromise entered into it was binding; but if there was no compromise, an offer to do so was not an admission of liability. 85 Ark. 337.

5. The court erred in refusing to give the instruction numbered 4, with reference to the train sheet introduced in evidence. It was record evidence, made at the time of the accident, and, in the absence of a showing that it had been changed or tampered with, it should have been conclusive. 61 Ark. 81; 51 Ark. 441; 107 Am. St. Rep. 500; 3 L. R. A. (N. S.) 1194; 191 Fed. 720; 74 Mich. 713.

*J. G. and C. B. Thweatt,* for appellee.

1. The second instruction given by the court was correct, first, because the lookout statute is broad enough to include within its provisions persons operating a car of the kind in question here. 78 Ark. 28. And, second, the common law, without any lookout statute, requires persons in charge of any vehicle of sufficient

weight, and operated at sufficient speed, to be dangerous, to keep a lookout for persons at public crossings.

2.  If appellant's witness, Kinder, who was in charge of the car, stated the truth in saying that when he first discovered appellee on the track, he was forty yards away from him, the car was either traveling at a reckless rate of speed, or else appellee's peril was discovered in sufficient time to have avoided the injury.

3.  The court was right in refusing to give instruction 2, after appellee's counsel had closed his opening argument. Kirby's Dig., § 6196; Hughes on Instructions to Juries, 13, art. 14, and p. 15 art. 15.

4.  Instruction 3, requested by appellant, was also tendered after appellee's counsel had closed his opening argument; but, under the proof, it was proper to disregard the matter of settlement or compromise. There was no accord and satisfaction. The alleged agreement was at best an accord executory. Beach on Contracts, 525, § 437; 78 Ark. 305; 88 Ark. 476.

5.  It was entirely proper to refuse appellant's requested instruction 4. There is no authority whatever for holding the train sheets of a railroad company to be conclusive evidence.

SMITH, J., (after stating the facts).   (1-2)  Instruction numbered 2, given by the court, was evidently framed under the impression that section 6607 of Kirby's Digest applied to handcars. But such is not the case. That section makes it the duty of all persons running trains in this State to keep a constant lookout for persons and property upon the track of any railroad, and further provides that the railroad company shall be liable for any damage done to any person or property by reason of the failure to keep this lookout, and imposes upon the railroad company the burden of showing that this duty has been performed. But this burden is imposed only upon persons running trains. The history of the section quoted is well known. It is Act No. 125 of the Acts of 1891, found on page 213 of the acts of that

year, and has a preamble referring to the decision of this court in the case of *M. & L. R. R. R.* v. *Kerr*, 52 Ark. 162. That case held that the extent of a railroad's duty to the owner of stock which had strayed upon its track was to use reasonable and ordinary care to avoid injuring it after discovering its presence on the track, and that it was not negligence for the railroad company to fail to keep this lookout for stock. This act was intended to impose a duty which the court had decided did not previously exist; but this duty was imposed only on persons running trains; and a handcar, even though propelled by some mechanism or machinery, and not by hand, is not a train. This section, 6607, was amended by Act No. 284 of the Acts of 1911, page 275, by the addition of a proviso to the effect that the right to recover damages should not be defeated by the contributory negligence of the person injured where, if such lookout had been kept, the employees in charge of the train could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril; and imposed upon the railroad company the burden to show that its duty to keep this lookout had been performed. But, as thus amended, the section applies only to persons operating trains. The duty of persons running a handcar, to keep a lookout, is, therefore, not a statutory one; but the duty to exercise reasonable care is a duty that does exist, whether commanded by statute or not. However, while the instruction given is not correct, as an abstract proposition of law under all circumstances, it was a correct declaration of the law as applied to the facts of this case. This court has held in numerous cases that one crossing a railroad track must look or listen, and that the failure so to do is contributory negligence, unless some circumstance in proof excuses the failure to perform this duty. The reason for the rule is that the track is a warning of danger and every one must know that trains run at all hours and are likely to pass at any time. And for the same reason we would hold, even in the absence

of a statute imposing the duty upon persons running trains to keep a lookout, that the duty to keep a lookout exists, and that this duty is not limited to persons running trains, but rests upon all persons operating any agency which may be dangerous to persons at railroad crossings. All persons must know that railway crossings are liable to be used at any time. This knowledge is imputed as a matter of law and, having this knowledge, this lookout must be kept at crossings, independently of any statutory requirement. In the Kerr case, *supra,* it was said that there was an obligation due to *persons* from railroad companies to preserve a strict lookout while running their trains. The injury here sued for occurred at a crossing, and the instruction was, therefore, correct as applied to the facts of this case.

(3) The issue of contributory negligence was properly submitted to the jury, as the proof on the part of appellee was that the injury occurred about dark, when he could not see distinctly, and the car carried no lights, and the noise of its approach was drowned by the roar of the freight train which passed just ahead of the car.

(4-5) Appellant's instruction numbered 2 was properly refused. The instruction, as we understand it, told the jury that, if an agreement to settle had been made and reduced to writing, and had been performed in part by appellant, and a tender of performance of other parts had been made, and that appellant was ready to perform all other parts thereof, that a verdict should be returned for defendant. This being upon the theory that there was an accord and satisfaction. Appellee testified that he took the check because the claim agent told him he would never get anything else, but that he had no intention to cash it, and did not do so. And it is undisputed that the railway company did not settle with appellee's attorney, and has not attempted to do so, except that it expressed its willingness so to do in its answer. This is not an accord and satisfaction.

In 1. *Corpus Juris,* § 20, page 363, it is said: "Mere readiness to perform is insufficient, and while there are

a few decisions which seemingly hold an accord, with tender of performance and refusal to accept, is equivalent to satisfaction, and may be so pleaded in bar of the action on the original claim, the great weight of authority is directly to the contrary. The majority of decisions are to the effect that tender of performance is in no case equivalent to performance and, therefore, not a satisfaction of the original obligation. Nothing short of actual performance, meaning thereby performance accepted, will suffice. But this rule, as is elsewhere shown, would not apply in a case where a new agreement or promise, instead of the performance thereof, is accepted in satisfaction.''

And sections 21 and 22, page 364, of the same authority read as follows:

''Sec. 21. Accord and part performance do not constitute satisfaction. It is merely executory so long as by its terms something remains to be done in the future. If performed in part only, the original right of action remains and the party to be charged is allowed what he has paid in diminution of the amount claimed.''

(6) ''Sec. 22. Performance of part and readiness to perform the balance, or performance in part and tender of performance of the balance, are likewise insufficient to constitute a satisfaction.'' This statement of the law is subject to the qualification that one may take such action, or accept such benefits, as to place it out of his power to abandon the contract of compromise, in which event his remedy is to sue on the agreement of compromise for damages for the part that remained unperformed. *Whipple* v. *Baker,* 85 Ark. 439. But that exception does not apply here.

See also *North State Fire Ins. Co.* v. *Dillard,* 88 Ark. 476; *Grimmett* v. *Ousley,* 78 Ark. 304.

The instruction was properly refused.

Instruction No. 3, asked by appellant, is conceded to be a correct declaration of the law; but it is urged that it was not asked in apt time.

(7)   Section 6196 of Kirby's Digest provides the order of trial after the jury has been sworn. Subdivisions 1, 2, 3 and 4 thereof cover the progress of the trial to the conclusion of the evidence. The fifth subdivision of this section provides:

"5.   When the evidence is concluded, either party may request instructions to the jury on points of law, which shall be given by the court, which instructions shall be reduced to writing if either party require it."

The sixth subdivision relates to the argument before the jury.

We think the trial judge has the discretion to require that the instructions be settled before the argument begins and, as a means to this end, may require any special request for instructions to be made before the opening of the argument. Of course, this discretion is not an absolute one, for questions might be raised in the argument which would necessitate additional instructions by the court.

At the conclusion of the court's instructions, appellant requested the court to give the instructions which it asked, except its instruction numbered 3, which last was not asked until after the opening argument had been made for appellee. The court refused to give these instructions, but granted permission to appellant to reduce them to writing. In the meantime, a controversy arose over a statement said to have been made in the opening argument in appellee's behalf, to the effect that the offer of compromise on the part of appellant was an admission of its liability. This argument is not reported in the transcript, but the record does show that this controversy arose, and the instruction was asked as soon as it arose and was, therefore, asked in apt time.

(8)   Under the circumstances we think appellant was entitled to have the jury specifically told that they should not consider the offer of compromise as an admission of liability. The case was a close one on the facts and, in the absence of specific directions to ignore the evidence in regard to the settlement, in determining

the question of liability, that evidence may have turned the scale in appellee's favor.

(9) We think no error was committed in refusing appellant's fourth instruction. There is nothing about these train records to import verity. Under some circumstances their recital might furnish evidence of a very satisfactory character, but the court can not say as a matter of law that these records were correctly kept, and that no agent has been mistaken in his report of the movement of any train, nor that the records have been properly kept so that all opportunity for mistakes, or possible collusion, have been eliminated. Such evidence should be weighed by the jury like other evidence and given such weight as it appears entitled to have.

For the error in refusing appellant's third instruction, the judgment will be reversed and the cause remanded.