461 P.2d 56

Selwyn VANDERPOOL, Plaintiff
and Respondent,

v.

B. K. HARGIS et al., Defendants
and Appellants.

No. 11438.

Supreme Court of Utah.

Nov. 13, 1969.

Alan H. Bishop, Salt Lake City, for appellants.

Michael Gottfredson, Salt Lake City, for respondent.

WAHLQUIST, District Judge.

This action was brought in district court to recover on three counts. The first count, a $2,000 promissory note; the second, a $5,000 promissory note; the third, for unpaid sales commissions. The jury found the facts in favor of the plaintiff on all counts.

The defendant concedes there is adequate evidence to support the jury's findings but contends that a new trial should be granted because of what the defense alleges was misconduct of the trial judge during the trial. The defendant asserts that the trial judge was, first, abusive to the defense counsel; second, made erroneous rulings concerning the admissibility of Exhibit 10–D, and third, gave the jury instructions that repeated and emphasized the plaintiff's theory of the case.

A pre-trial order had been prepared by another District Judge. The order stated that the plaintiff would contend that both promissory notes were signed by Leo I. Crowder as manager of defendants' eastern chinchilla sales franchise, also that the plaintiff's sales commissions were unpaid by same firm. The order stated that the defendants' evidence would be that Leo Crowder had received the money and not the defendant, also that the plaintiff had failed to remit sales receipts which were far in excess of commissions. The pre-trial order also provided "that the foregoing order, when entered, will control the subsequent course of the action, unless modified at the trial to prevent manifest injustice."

Virtually all evidence offered by either side was objected to. The plaintiff offered his own testimony showing that Crowder signed the notes for loans made to the company and used the money for company expenses. The plaintiff also testified that he had conversations with the defendant throughout the entire period. He stated the defendant not only knew of the loans but requested them. The plaintiff also stated that the defendant repeatedly acknowledged the debt and even had the notes delivered to himself on a promise that he would forthwith remit payment.

The defense counsel's cross-examination of plaintiff resulted in extensive courtroom turmoil. The defense attorney had personally been present and had participated in many of the business conversations between plaintiff and the defendant. The defense counsel's questioning technique was to form his questions in general as, "Did you not tell the defendant and me * * *," and then a lengthy statement implying what the attorney remembered. Other questions followed the form of, "Did

I not tell you we * * *," followed by other statements of what the defense attorney asserted that he had witnessed. The record shows that many times both questions and answers were interrupted by the witness and the attorney. The attorney called the witness a falsifier. The witness called the attorney a falsifier. The witness accused the attorney of drunkenness. The attorney accused the witness of drinking. The attorney accused the witness of having a "convenient memory." The witness accused the attorney of trickery. The plaintiff's attorney objected throughout the cross-examination that defense counsel was converting the right to ask leading questions into a vehicle of testifying himself without being subject to cross-examination. The court attempted to get the defense attorney to keep his leading questions very short so as to cut down the argumentative effect. Later the court partially forced the defense attorney to use questions in the form customarily used during direct examination. The appellant took vigorous exceptions to this limitation in his manner of cross-examination.[1]

█ It is difficult to lay down an all-embracing rule as to what extent an attorney may imply personal knowledge in

leading questions. It is also difficult to frame an all-embracing rule as to what action a court may take in limiting cross-examination where attorneys have witnessed critical conversations. Certainly open argument and name calling by attorneys and witnesses should be eliminated. In light of the entire record we can see no abuse of the trial court's discretion here in control of defense counsel.[2]

The trial court rejected Exhibit 10–D a number of times before receiving it in evidence. The appellant contends this prejudiced him before the jury. Exhibit 10–D appears on the face of it to be a contract for purchase of defendant's rights in the eastern chinchilla franchise by the plaintiff and Leo Crowder as equal partners. It is signed by all three parties. There is a blank in the instrument wherein the purchase price was to be inserted. On the bottom of the instrument are these handwritten words which are signed by the defense attorney:

It is agreed that the copy of this contract is not to become effective until the amount owed to Hargis is filled in. All other provisions apply.

█ The first reference to this instrument is the defense counsel's cross-exami-

---

1. Rule 43(b), Utah Rules of Civil Procedure, permits leading, even on direct examination, of adverse witness, but see 98 C.J.S. Witnesses § 404, p. 198.

2. As to trial court's prerogative in control of trial, see Hanks v. Christensen, 11 Utah 2d 8, 354 P.2d 564 (1960); and St. Louis S. W. Ry. Co. v. Mitchell, 115 Ark. 339, 171 S.W. 895 (1914).

nation of the plaintiff as a witness. The plaintiff's position was that the three had agreed to the contract subject to the arrival at an agreed purchase price. He stated that this figure was never agreed to. The defense then asked the exhibit be received in evidence. The defense attorney had, by leading questions, stated that the figure had been arrived at and that notice was given which had been consented to by the silence of all parties. This implication does not constitute evidence and does not in any way complete the foundation necessary for the admission of this document. The plaintiff objected on the ground that this agreement was obviously incomplete, mere preliminary negotiations that were never closed. There is no doubt that at the time Exhibit 10–D was first offered the record was to that effect. The objection to the admissibility of the evidence was sustained.

■ On appeal, the plaintiff's attorney can defend this first ruling in rejecting Exhibit 10–D. He can also defend a number of other rulings of the trial court when Exhibit 10–D was offered preliminarily. However, he concedes that some of the later rulings sustaining his objections to the offer of this exhibit are not defensible.

The pre-trial order was silent as to Exhibit 10–D and the theory of defense it was offered to support. The court's receipt of the evidence had the effect, in part of modifying the pre-trial order. While the evidence, in addition to supporting this theory of the defense, also had the effect of rebutting plaintiff's theory of the action (that the notes were a loan to the defendant). While it would have been desirable for the exhibit to have been received earlier in the proceedings, we cannot see how the delay in receiving it could have affected the jury. This record is so repetitious with unfounded objections by attorneys for both sides, and improper questioning on both direct and cross-examination by both sides, and repeated rulings by the court attempting to curtail them in their conduct, that we cannot believe that the delay actually affected the jury's decision in this matter.[3]

■ The court granted a series of instructions requested by plaintiff's counsel and stated the plaintiff's theory of the case in more than one of them. Each of these instructions was so designed as to cover some slight variance in a possible finding the jury might make as to the facts in the case. None of the instructions themselves are incorrect in law nor do they refer to any theory or facts not in evidence. It would have been more desirable to have consolidated the plaintiff's requests. The court received no assistance from defense

3. Rule 61, Utah Rules of Civil Procedure, Harmless Error.

counsel in this regard. In fact the defense counsel submitted no requested instructions. Considering the length of this proceeding and the extensive arguments throughout, we do not believe the repetitive effect of these instructions would be sufficient to have a material effect on the jury.

Judgment affirmed. Costs to plaintiff (respondent).

CROCKETT, C. J., and CALLISTER, TUCKETT, and ELLETT, JJ., concur.

HENRIOD, J., not participating.