Ward BOONE *v.* Jim ARMISTEAD

CA 94-271                               892 S.W.2d 531

Court of Appeals of Arkansas
Division I
Opinion delivered February 22, 1995

*Davis & Cox*, by: *James O. Cox*, for appellant.

*Skinner Law Firm*, by: *Jack Skinner*, for appellee.

MELVIN MAYFIELD, Judge. Ward Boone has appealed from an order of the chancery court which held that two judgments he held against appellee Jim Armistead should be satisfied of record.

On December 30, 1992, appellee filed a complaint to compel entry of satisfaction of two judgments. The appellee alleged that on March 20, 1985, the parties entered into an agreement in which the appellant agreed to satisfy two judgments against the appellee (one for $49,547.83 and one for $12,808.07) in consideration of the transfer of certain real property; that the appellee fully performed his obligations under the agreement; and that the appellant failed to satisfy the judgments.

On January 15, 1993, the appellant filed an answer in which he denied that the appellee had fully performed his obligations under the agreement. The appellant admitted the conveyance of title of the property, but alleged appellee, in addition to conveying the title, was to install sewer and water service to the property but never did so.

At a hearing held November 2, 1993, Jerry Solesbee, a home builder and plumber, testified that in March 1985 the appellee traded a piece of property, owned by Solesbee, to the appellant for a debt the appellee owed to the appellant. Solesbee said the appellee asked him to work something out with Solesbee and

Solesbee agreed. Solesbee also testified that on March 21, 1985, the appellant, the appellee, Solesbee, and Solesbee's wife "sat down at the house and swapped money for the deed on that piece of property on El Paso Street."

Solesbee testified that at the time the deed changed hands the appellee said they needed a release before they let the appellant have the deed but appellant said all he had to do was make a call and he would do that "as soon as we get our deal done." Solesbee said that appellant called his attorney and instructed him to fix a release for the appellee and then Solesbee gave appellant the deed. Solesbee testified further there was nothing mentioned about a partial release. Solesbee testified that he received $19,000, $6,000 from the appellant and the balance from the appellee; that appellant received the deed; but that the appellee did not receive the release. The deed was executed March 20, 1985, and filed of record March 21, 1985.

The appellee Jim Armistead testified that his agreement with the appellant was that he would trade land and building on El Paso street for a complete and total release of the judgments against appellee; that the total deal was that they would swap the property for the total judgment; and that he never heard anything about a partial release before filing this suit. Appellee said that prior to March 20, 1985, there were no discussions about hooking up water and sewer on the property and that on March 21, 1985, the money and deed changed hands.

The appellee also testified that there was some discussion about giving the appellant the deed before appellee got the release, but appellant called his attorney and told the appellee he could go to the attorney's office that evening and pick up the release. The appellee said he went by and the release was not ready, but the appellant's attorney told him not to worry, he knew it was all satisfied. Appellee testified that he first heard about the water and sewer two weeks later when appellant called and said he needed another $500 to run water and sewer to the building. The appellee said he told the appellant he didn't have $500 and that they satisfied "that thing and there was nothing to do about the water and the sewer."

The appellant testified that in 1985 the appellee offered him Solesbee's building as "partial" settlement; that there were other

terms in the agreement; that there was never an agreement to satisfy the judgments in full; and that on the date of the transfer "they" assured him that water and sewer would be put in. However, the appellant said, in 1988 he installed the water and sewer.

Appellant also testified that he did not know whether he made the demand regarding water and sewer before he received the deed, but it was during discussion at the closing between the three of them. He said it had not been brought up before, but while they were sitting at the table appellee agreed to put in the sewer and water, so appellant went ahead with the deal with the understanding that the sewer and water would be hooked up.

In an order entered November 16, 1993, the chancellor found there was an agreement between the parties to satisfy both judgments against the appellee and, in keeping with the agreement, the appellant paid $6,000 and the appellee paid $19,000 to secure the transfer of certain property to the appellant in full and final satisfaction of the two judgments. The chancellor also found that on the day of the transfer the parties agreed that the appellee would be responsible for installing water and sewer to the property; that the appellant had paid $1,161 to install the water and sewer; that the appellee owed appellant that amount plus an attorney's fee of $200; and if the appellee paid the amount due by November 5, 1993, an entry of full and final satisfaction of the judgments should be entered. The chancellor also found that the entire sum was paid on November 4, 1993; therefore, the two judgments had been fully paid and satisfied; and the Clerk of the Court was directed to enter a satisfaction of record of the judgments.

On appeal, appellant argues that the trial court erred in ordering the satisfaction of the judgments because the appellee failed to fully satisfy the agreement by failing to put in the sewer and water.

██ An accord and satisfaction generally involves a settlement in which one party agrees to pay and the other to receive a different consideration or a sum less than the amount to which the latter is entitled. *Hardison* v. *Jackson*, 45 Ark. App. 49, 871 S.W.2d 410 (1994). The defense of accord and satisfaction presents an issue of fact and the appellee had the burden of proving accord and satisfaction. *Holland* v. *Farmers & Merchants*

*Bank,* 18 Ark. App. 119, 711 S.W.2d 481 (1986). On appeal, chancery cases are tried de novo on the record, but the appellate court will not reverse the findings of the chancellor unless they are clearly erroneous or clearly against the preponderance of the evidence. *Hardison* v. *Jackson, supra.*

Here, Jerry Solesbee testified that appellant was to receive a deed to the piece of property and the appellee was to receive a release for the judgments owed the appellant and that there was nothing mentioned about a partial release.

The appellee testified that the total deal was that they would swap the property for the total judgment; that he never heard anything about a partial release before filing his complaint to compel entry of satisfaction of judgment; that there were no discussions about hooking up water and sewer on the property prior to March 20, 1985; and that on March 21, 1985, the money and deed changed hands at Solesbee's house.

The appellant testified that he did not know whether he made the demand for water and sewer before he received the deed but that appellee agreed while they were sitting at the table at the house.

Under the evidence in this case, we think that the chancellor could have found that there were two separate agreements. One in which appellant was to receive a deed to the property in satisfaction of the debt, and another under which appellee was to install water and sewer to the property. Therefore, we do not find the chancellor erred in ordering satisfaction of the judgments.

In regard to appellant's argument that if part of the consideration agreed upon in an accord and satisfaction is not paid the whole accord fails, it is true that generally an accord and part performance will not constitute satisfaction. *General Air Conditioning Corp.* v. *Fullerton,* 227 Ark. 278, 298 S.W.2d 61 (1957). However, one may take such action, or accept such benefits, as to place it out of his power to abandon the contract of compromise, in which event his remedy is to sue on the agreement of compromise for damages for the part that remained unperformed. *St. Louis Southwestern Railway Co.* v. *Mitchell,* 115 Ark. 339, 171 S.W. 895 (1914). Where the discrepancy between the

performance and the accord is trivial, the general rule is reasonably applied. 1 Am. Jur. 2d *Accord and Satisfaction* § 49 (1994). Therefore, even if the chancellor had not found there were two separate agreements, we could not say, under the evidence here, that the chancellor erred in ordering satisfaction of the judgments.

Affirmed.

ROGERS and ROBBINS, JJ., agree.