503 P.2d 855

Mavis E. BATT et al., (and named children),
Plaintiffs and Appellants,

v.

The STATE of Utah and Jack B. Parson
Construction Company, a corporation,
Defendants and Respondents.

No. 12639.

Supreme Court of Utah.

Nov. 27, 1972.

Ellett, J., concurred in result.

W. Brent Wilcox, and Delbert M. Draper, Jr., Salt Lake City, for appellants.

Vernon B. Romney, Atty. Gen., Merlin R. Lybbert, Salt Lake City, for State of Utah.

Jay E. Jensen, of Christensen, Gardiner, Jensen & Evans, Salt Lake City, for Parson Const. Co.

CROCKETT, Justice:

Plaintiffs Mavis Batt and her children [1] sued defendants Road Commission and Jack Parson Construction Company for the deaths of her husband Charles, and 16-year-old son David, which resulted when the latter, driving northbound on Highway 91 just north of Ogden at about 10:00 p. m. on August 26, 1969, collided with a southbound car driven by Arnold Grundvig, Jr.

The issues were submitted to a jury on special verdicts which they answered thus: that the contractor, Parsons, was not negligent; that the Road Commission was negligent, but that it did not proximately cause the accident; and that the deceased driver was negligent, and that his negligence was the proximate cause of the collision. On the basis of those answers the trial court entered judgment of no cause of action against the plaintiffs.

Plaintiffs make two main attacks in attempting to upset the judgment. The first relates to claimed errors in rulings on evidence and jury instructions concerning the speed of the Batt automobile. The second charges impropriety in permitting the imputation of negligence of the son David to bar recovery for the death of his father.

The accident of concern is unfortunate not only in the major sense because of the death of the father and son, but in a lesser one in the fact that how it happened and the rights of the survivors must be determined largely on the basis of post-mortem physical evidence.

It appears that at that stage of resurfacing the four-lane highway, there had been painted only a "skip-line" to divide the two southbound lanes of traffic, but as yet there was no marked center line. Plaintiffs contend that David would have regarded the skip-line as the center line and felt safe driving to the right of it. But he was thus unfortunately in the southbound lane and collided with the southbound

1. As permitted by Sec. 78-11-6 and 7, U.C.A.1953.

Grundvig car. The defendant's position to the contrary is that David was negligent: in driving into a plainly marked and plainly evident construction area, without keeping proper lookout ahead, at an excessive rate of speed, without keeping proper control of his car, and driving on the wrong side of the highway where the collision occurred.

The main foundation for ascertaining the speed of the Batt automobile is the testimony of investigating officers: that approaching the point of impact it left tire marks proceeding in a slight arc or curve for a distance of 219 feet. On the basis of this evidence and other pertinent factors, Professor Fred R. Wagner as an expert witness, gave his opinion that the speed of the Batt car was between a low of 57 and a high of 84 miles per hour.

Plaintiffs attack this testimony, asserting that in his formula the Professor improperly assumed the tire marks to be "scuff marks" or "skid marks" and not solid brake marks, and that upon cross-examination he admitted that if they had been the latter his conclusion as to speed would have been different. It is of interest to note that it is not shown what the difference would have been.

The controversy over this evidence focuses upon the testimony of one of the investigating officers, Allen Gines. He was called by the plaintiffs and described the situation as it existed after the accident.

Plaintiffs argue that the defendants accomplished a distortion of the facts by inducing the officer to describe the tire marks as "scuff marks." They urge that such a classification is highly scientific and that the officer was not qualified to state such a conclusion. In that regard plaintiffs' own direct examination of Officer Gines is pertinent:

Q. Okay, Now, pursuant to this investigation, did you make a determination in your opinion as to whether or not these marks or any of them were skid marks? That is, locked up brakes skidding on the surface?

A. In my opinion counsel, they were not locked up skid marks . . .

Q. All right. What would you say these marks were as you observed them in your opinion?

A. I would say that these tire marks . . . were left on the highway from this car that came across the highway either from turning the wheel severely or from some other thing—some other force you could do it but turning the wheel, putting the pressure of the tires down on the pavement as the car started in an arc like this . . . ..

It is of some significance that it was the plaintiffs' counsel himself who elicited the testimony of which he now complains. However, we note here that we are in accord with the idea that a party

neither has to vouch for, nor be bound by, the testimony of a person whom he calls as a witness.[2] We place no importance on that matter here. But what is important is the fact that a police officer, trained and experienced in such matters, is competent to make the observations Officer Gines did as to the character of the tire marks.[3] In addition to this, the hypothesis of Professor Wagner did not rest entirely upon that testimony but also upon his own analysis of the scene as shown by photographs. The admissibility of such testimony is primarily for the trial court to determine. He is allowed considerable latitude of discretion; and this court will not reverse in the absence of clear showing of abuse; but will leave the challenge to its reliability as going not to its competency, but as to its weight and credibility, which is for the jury to determine.[4] We are not convinced that there was impropriety in allowing the testimony of Officer Gines, or of Professor Wagner.

In a contention cognate to the above, plaintiffs also urge that the court committed error in instructing the jury with respect to speed. They urge that inasmuch as there was no direct evidence that speed was causative of the collision the court was not justified in giving any instruction in speed at all. This argument ignores the proposition that the court and jury may act, not only upon the direct evidence, but also upon any logical inferences that may be drawn therefrom.

Plaintiffs further complain of the court instructing concerning speed in the usual terms: that it was the duty of plaintiffs' driver not to exceed a speed which was safe, reasonable and prudent under the circumstances which at the place in question would be the posted speed of 40 miles per hour and that, " . . . any speed in excess . . . [thereof] would constitute sufficient evidence to permit a finding . . . " of negligence. They argue that this instruction "was fatally incomplete and its practical effect was to direct a finding of negligence against the plaintiffs" unless a further requested instruction was given explaining that if the speed was nevertheless reasonable, under the circumstances it was not negligent. It seems to us that the plaintiffs' request was but an inverse expatiation on what the trial court correctly told the jury, and from which they would not misunderstand the duty imposed upon the driver.

2. See statement in Schlatter v. McCarthy, 113 Utah 543, 196 P.2d 968; also, that a party may cross-examine his own witness, see Xenakis v. Garrett Freight Lines, 1 Utah 2d 299, 265 P.2d 1007; see also Rule 20, Rules of Evidence, Utah.

3. Cf. Gittens v. Lundberg, 3 Utah 2d 392, 284 P.2d 1115; and Dudek v. Popp, 373 Mich. 300, 129 N.W.2d 393.

4. See Taylor v. Johnson, 18 Utah 2d 16, 414 P.2d 575; Webb v. Olin Mathieson Chemical Corporation, 9 Utah 2d 275, 342 P.2d 1094.

■ Plaintiffs also assign error for giving the standard instruction on proximate cause [5] which includes the phrase that it is the cause "which is unbroken by an efficient intervening cause," urging that "there was no testimony or evidence whatsoever as to an intervening cause." This argument does not take into account the possible interaction of the various conduct which could logically be imputed to the different parties, including the fact that negligence of the son David could, and according to the jury's finding did, constitute the later intervening and efficient cause of the accident, and thus insulate any negligence of the defendants as possible proximate causes thereof.

■ The final point we consider is plaintiffs' contention that the court improperly submitted the issues to the jury upon an assumption that if David Batt was guilty of negligence which caused the collision, this should be imputed to his father and bar plaintiffs' recovery for the latter's death. We set aside the matter of the father's presumptive control of the vehicle.[6] Defendants' first rejoinder to this attack is that the plaintiffs failed to give a proper request or to make appropriate objections to the instructions given on this phase of the case, and therefore should not now be heard to complain thereof.[7] More importantly, upon an analysis of the answers given by the jury it will be seen that the question is now moot, because upon proper instructions to the jury on the subject of the negligence and proximate cause, they found that the son David was negligent, and that it was his negligence which proximately caused the collision. We accept that as the established fact, which precludes the possibility of recovering against either of the defendants on his own behalf or that of his father.

■ In this as in most controversies where there has been a protracted trial there are some occurrences which counsel can point to as error with some plausibility. But as we have repeatedly affirmed, when the parties have had their entitlement of an opportunity to fully present their evidence and arguments to a court and jury, who have arrived at a verdict and judgment, this court should be reluctant to interfere therewith, and should not do so merely because of imperfections or irregularities. The verdict should not be disturbed unless there was some substantial error so that the party was deprived of a fair trial and there is a reasonable likeli-

5. Jury Instruction Forms of Utah, No. 15.6.

6. See Fox v. Lavender, 89 Utah 115, 56 P.2d 1049.

7. Rule 51, Utah Rules of Civil Procedure; Morgan v. Pistone, 25 Utah 2d 63, 475 P.2d 839.

**422**

hood that in its absence there would have been a different result.[8] We do not believe any such circumstance exists here.

Affirmed. No costs awarded.

CALLISTER, C. J., and TUCKETT, and HENRIOD, JJ., concur.

ELLETT, J., concurs in the result.

---

8. See Sec 77–42–1, U.C.A.1953, and Rule 61, U.R.C.P.; Vanderpool v. Hargis, 23 Utah 2d 210, 461 P.2d 56.