Inner City Wrecking Co., Appellee, *v.* Bilsky, Appellant.

[Cite as Inner City Wrecking Co. v. Bilsky (1977), 51 Ohio App. 2d 220.]

(No. 35691—Decided April 21, 1977.)

*Mr. William D. Moore* and *Mr. Patrick M. Flanagan,* for appellee.

*Mr. Harry M. Brown,* for appellant.

Pryatel, J. In its amended complaint, filed April 11, 1975, the plaintiff-appellee, Inner City Wrecking Company (hereafter referred to as appellee), alleged that $6,250, plus interest was due to it from the defendant-appellant, Marvin Bilsky (hereafter the appellant), on an account, for labor and materials furnished in the demolition of certain buildings. A copy of the account, attached to the complaint, listed the amount of $8,000 for the demolition, less $1,500 "to brick up joist openings" and less $250 "for portion, left on west end of building to stabilize wall"; thus, a total of $6,250 remained.

The appellant, in an amended answer and amended counterclaim filed April 16, 1975, denied the allegations of the amended complaint. He alleged that the appellee breached the agreement between the parties which gave rise to the account by negligently failing to leave the remaining

undemolished structures on the property "in a structural- ly sound condition," and by not leaving the site "in clean condition, leveled to grade." A copy of the alleged "Agreement" was attached to the complaint, and consists of a three-page proposal, each page of which was initialed at the bottom by the president of the appellee and by the appellant.

The third page was signed in full at the end of the proposal by the same individuals.

The proposed agreement provides, in pertinent part, as follows:

"1. You shall furnish all labor, material and equipment, at your own risk and expense, to tear down, remove and cart away all of the materials comprising the following buildings * * *. The buildings shaded on the attached plot plan shall remain, and the demolition to be performed hereunder shall be accomplished in such a manner as to leave the remaining buildings *structurally sound,* with exterior walls common with razed buildings picked clean, and otherwise free from injury during and resulting from the said demolition. * * *

"2. You shall tear down, remove and haul away all materials comprising the buildings to be demolished, including all foundation and other walls, excepting only walls common with the remaining buildings, and *the site shall be left in a clean condition, leveled to grade.*

"4. All demolition work performed by you hereunder shall be accomplished in a manner which shall not interfere with the property, employees, customers or business of tenants occupying the remaining buildings at the site.

"5. The undersigned shall pay you the sum of *Eight Thousand Dollars* ($8,000.00) for the accomplishment of the foregoing. * * *" (Emphasis added.)

A paragraph of the initial proposal (No. 3) was crossed out, and the initials of the appellant appear next to the deletion as well as at the bottom of the page on which the paragraph is typed. The initials of the president of the appellee likewise appear at the bottom of the page, but do not appear next to the deletion. The deleted paragraph designated who should own the material hauled away, but

no new paragraph was inserted to cover this question. The deleted paragraph provided:

"3. All material hauled away by you shall thereupon become your property, except brewing equipment. All such brewing equipment removed from the site shall be owned equally by you and the undersigned, and you shall remit to the undersigned an amount equal to one-half (½) of the gross proceeds of any sale of such equipment made by you, less an amount equal to one-half (½) of sales commissions and advertising costs, if any, incurred by you in connection with such sale. Beer storage tanks shall not be considered brewing equipment."

The appellant asserted a counterclaim arising out of the agreement. He claimed that as a result of negligent demolition, the value of the buildings remaining was reduced by $200,000. He alleged further that because of the damage done to those buildings, they were left vulnerable to vandals, resulting in $50,000 of further damage, and they could no longer be rented, resulting in a loss of $250,-000 in rent per year.

At trial before a jury, the appellant sought to qualify, as an expert witness, the president of a demolition company who had bid on the same job but who had lost the contract to the appellee. The court permitted the witness to testify as to his firsthand knowledge of the condition of the remaining buildings both before and after the demolition, but the court prevented him from testifying as an expert as to his opinion of how the job could have or should have been done to avoid damage to remaining structures.

The trial court did not allow the appellant to introduce testimony as to the salvage value of all the materials comprising the demolished buildings that the appellee hauled away.

At the close of the case, the jury received its instructions, retired to deliberate, returned to ask whether it could determine the amount that the appellee should be paid, received further instructions, and finally rendered a verdict for the appellee on its complaint and against the appellant on his counterclaim, awarding the full damages

claimed in the complaint, $6,250 on the account, plus $250 interest.

The appellant perfected his appeal and asserts four assignments of error.

*Assignment of Error No. I:*

"The Trial Court erred in refusing to allow Gerald Gerson, appellant's expert witness to testify."

At trial, when the appellant attempted to qualify Mr. Gerson as an expert witness, counsel for the appellee objected and stated the ground for his objection:

"We have not been apprised, we were not previously apprised that [appellant's counsel] was going to use this person as an expert, and under the rules of this court he had a duty to advise us of any expert that he was going to use, and this he did not do, and therefore I don't believe that he should now be able to use Mr. Gerson as an expert in this case."

Thereupon, the trial court sustained the objection, allowing the witness to testify but *not* as an expert.

Subsection (5) of Civ. R. 16 provides that local courts may adopt rules to accomplish the exchange of reports of expert witnesses expected to be called by each party at trial. Pursuant to the authority vested in local courts by this subsection, Rule 21, of the Cuyahoga County Court of Common Pleas (hereinafter referred to as Local Rule 21), was in effect at the time of this trial and provides, in relevant part:

"Part I. Pretrial Statements

"(A) At least one week prior to the scheduled pretrial hearing, *the judge shall require* counsel for both sides to completely execute and file a separate Pretrial Statement in the Central Scheduling Office on behalf of their respective clients. Before the submission of such statements counsel must confer with each other and the statements must reflect the results of their conference. *In the event of any unnecessary delay or failure to cooperate as required herein the judge shall invoke the sanctions authorized under Ohio Civil Rule 37.*

"Copies of the Pretrial Statements shall be provided

by the Court. However, exact reproductions may be used.

"The Pretrial Statements will recite a brief description of the case and the injuries involved, will list item by item, the ascertainable damages such as medical expenses, lost earnings, property damage, etc., will indicate the status of depositions and physical examinations, and reflect the lowest demand and highest offer. *Since Ohio Civil Rule 16 authorizes the court to require counsel to exchange the reports of medical and expert witnesses expected to be called by each party, the Pretrial Statements shall indicate full compliance with this aspect of the rule. Expert witnesses whose reports have not been furnished prior to pretrial will not be permitted to testify at the trial.*" (Emphasis added.)

The rule authorizes further that,

"In addition, the judge assigned the case *may* for good cause shown *at the initial hearing* waive the pretrial requirements stated herein." (Emphasis added.)

Subsection (5) of Civ. R. 16 complements Civ. R. 26 (B)(4)(b), which allows full discovery, by means of interrogatories, of the identity and expected testimony of an expert who will be called at trial. Civ. R. 26(B)(4)(b) states, in part:

"* * * [A] party by means of interrogatories may require any other party (i) to identify each person whom the other party expects to call as an expert witness at trial, and (ii) to state the subject matter on which the expert is expected to testify."

Civ. R. 33 governs the use of interrogatories to inquire into the matters permitted to be discovered by Civ. R. 26(B)(4)(b).

Both Local Rule 21, Part I(A) and Civ. R. 33 may be enforced by the sanctions provided in Civ. R. 37 (A)(2), which reads, in relevant part:

"If * * * a party fails to answer an interrogatory submitted under Rule 33 * * * the discovering party may move for an order compelling an answer * * *."

Civ. R. 37(B)(2) states, in part: "If any party * * * fails to obey an order to provide or permit discovery * * *

the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: * * *

"(b) An order * * * prohibiting him [the disobedient party] from introducing designated matters in evidence."

As can be seen, Local Rule 21, Part I(A), authorizes a specific sanction, in addition to those listed in Civ. R. 37, for a party's disobedience of the judge's requirements that Pretrial Statements be filed, and that reports of expert witnesses be exchanged. The sanction is that the expert witness of the disobedient party will not be permitted to testify.

However, before a party or his counsel may be subject to the sanction of prohibiting his expert witness from testifying, pursuant to Civ. R. 37, such person or counsel must be in default of an "order," rendered by the trial court, which is properly announced and formally entered. *Sexton* v. *Sugar Creek Co.* (1973), 38 Ohio App. 2d 32.

An examination of the record in the case at bar does not reveal any order of the court compelling appellant to answer interrogatories, submitted under Civ. R. 33, seeking to discover the name and testimony of his expert witness. Nor does the record contain a motion by the appellee for an order compelling appellant to answer such interrogatories. Indeed, the record reveals that the appellee did not even submit interrogatories seeking to discover the name and expected testimony of appellant's expert witness. In addition, an examination of the record reveals no order compelling the appellant to furnish the name or report of his expert witness in accordance with Local Rule 21, Part I(A). There having been no order entered by the trial court compelling compliance with either Civ. R. 33 or Local Rule 21, Part I(A), the sanction imposed at the time of trial was beyond any authority derived by the court from Civ. R. 37.

Furthermore, the requirement that counsel file Pretrial Statements is not self-executing under Local Rule 21, Part I(A). Rather, the requirement is contingent upon the judge issuing it at least one week prior to the scheduled pretrial hearing. Although the rule is mandatory that the

judge "shall" issue such a requirement, unless and until the judge does so, there is no requirement on counsel to file Pretrial Statements. If the judge does require that Pretrial Statements be filed, and also requires that counsel exchange reports of expert witnesses expected to be called by each party, but a party's Pretrial Statement does not indicate full compliance with the requirement that a report of its expert witness be furnished, only then may the court impose the sanction written into Local Rule 21, Part I(A), that the expert witness "will not be permitted to testify at trial."

In the case at bar, there is no indication in the record that the trial court required counsel for both sides, one week before a scheduled pretrial hearing, to submit Pretrial Statements, or that any were filed by either party. Nor does the record show that the trial court required both parties to exchange reports of expert witnesses or that having imposed such requirements, it waived them for good cause shown at an initial hearing. Indeed, the appellee, which implored the trial court to sanction appellant for noncompliance with Local Rule 21, Part I(A), itself did not furnish a report that its president would testify as an expert. Moreover, the record does not show that a pretrial hearing was even scheduled or held.

The brief of the appellee states that a pretrial hearing was held before the court on November 13, 1975, which referred the case for trial to a visiting judge. The brief of the appellant indicates that no such pretrial was held, but the reply brief of the appellant apologies for that indication, and admits that there was a pretrial, but that it was "at best an informal one, which could be characterized as merely a last-ditch effort to work out a settlement." These statements are all outside of the record, however, and cannot therefore be considered on appeal. *Central National Bank* v. *International Sales Co.* (1950), 87 Ohio App. 207; Appellate Rule 12(A).

There having been no requirement issued by the trial court that Pretrial Statements should be filed or that reports of experts should be exchanged, the sanction imposed at the time of trial, prohibiting appellant's expert from

testifying as an expert, was beyond any specific authority derived from Local Rule 21, Part I(A), itself, as well as beyond any general authority derived from Civ. R. 37 to which Local Rule 21 refers.

Therefore, the trial court's ruling that the appellant's expert witness could not testify as an expert, for failure to apprise the opposing party of such testimony, was in error in the absence of any order under Civ. R. 37 compelling discovery in answer to interrogatories, and in the absence of any order under Local Rule 21, Part I(A), compelling compliance with pretrial requirements.

Appellant's assignment of error is well taken.

*Assignment Of Error No. II:*

"The Trial Court erred in consistently refusing to allow any testimony with respect to the salvage value of the materials carted away by appellee."

The apparent basis for the trial court's refusal to allow any testimony about the salvage value of materials hauled away by the appellee was that such evidence was immaterial to any issue in the case. The trial court explained its ruling in the following conversation with appellant's counsel at trial:

"Appellant's Counsel: There is a claim here for payment due, and it is part of our position that we owe him nothing more for the work done, that he did not finish his contract. As a part of that, he has been substantially paid for the work that he did, and part of that was the salvage that he took out of the building with our permission and agreement. If I am allowed to pursue it, I would show that it was his proposal that he be allowed to take it out.

"The Court: It is not an issue in this case, and I am going to sustain the objection. There is no issue, If you want to raise that as an issue, you should have raised it. It is not an issue."

The appellant claims that he sought to introduce such evidence "to show that the cash amount [$6,250] of the consideration of the contract was but a minor part of the full consideration, the remainder being the salvage value." The appellant is correct in stating that there is authority supporting the proposition that, generally, where the con-

sideration is expressed by way of a recital, parol evidence is admissible to show an agreement to pay a consideration additional to that expressed in the contract or in the recital. *Ayres* v. *Cook* (1942), 140 Ohio St. 281. But, the appellant is mistaken in his claim that his parol evidence in this case is material to the issues.

The pleadings do not bring into dispute that the $6,250 cash amount written in the agreement was at least a part of the consideration which the appellant originally agreed to pay. Nor do the pleadings raise an issue as to whether such cash consideration was in fact paid in a form other than cash, namely, in the form of salvageable material. The appellant's answer alleges that he has been relieved of his original obligation to pay the full $6,250, not because the appellee has been paid in the form of salvageable material, but because the appellee allegedly breached the agreement through negligent performance. Furthermore, the appellant's counterclaim seeks damages flowing from the allegedly negligent demolition rather than from the appellee's retention of salvageable material hauled from the demolition site.

Thus, the only issues before the jury were whether the appellee breached by negligently performing its part of the bargain or whether the appellant breached by refusing to pay $6,250 of his part of the bargain, and what damages, if any, flowed therefrom.

Had evidence been admitted to show that the full consideration included the value of salvageable material as well as $6,250 cash, and that the value of the salvageable material had been paid, such evidence would not have addressed the real issues of the case. Such evidence could only have tended to mislead the jury.

As stated in the appellant's own brief:

"In fact, had such testimony been allowed, the jury would have viewed the relative positions of the litigants in quite a different light. Rather than being the injured party by reason of non-payment for work performed, appellee could be characterized as having been more than adequately compensated, in fact, grossly overcompensated, for work

improperly executed. Appellant's proffer shows that the salvage value was estimated at in excess of $60,000. Thus, the value of the contract was over $68,000, of which only $6,250, or less than 10%, remained unpaid."

The danger of the jury viewing this case in such a light, and the risk of its characterizing the appellee in such a way, are precisely the sort of evils guarded against by the rule that evidence, to be admissible, must relate and be confined to the matter or matters in issue in the case at bar. *City of Galion* v. *Lauer* (1896), 55 Ohio St. 392.

The function of the jury in deciding the appellee's claim was simply to determine the extent of the appellant's liability, if any, for the unpaid portion of the consideration, however small that may be in relation to the whole. To do so, it had to consider to what extent, if any, the appellee's allegedly negligent performance relieved the appellant of his duty to pay.

The function of the jury in deciding the appellant's counterclaim was to determine the extent of the appellee's liability, if any, for damages flowing from the allegedly negligent demolition. Any consideration by the jury in connection with this issue of the whole value of the contract received by the appellee could only prejudice the jury against that party.

Accordingly, this assignment of error is overruled.

*Assignment Of Error No. III:*

"The Trial Court erred in determining, *a priori,* that appellant had a duty to minimize his damages and that he did not meet such duty, and by refusing to allow appellant the opportunity to testify with respect to his attempts at compliance with this duty."

The parties to this appeal agree that the principle of minimization of damages governs the appellant's counterclaim but they disagree as to whether this principle was properly applied by the court at trial. The fundamental principle is that one injured in his person or property by a wrongful act or wrongful omission to act, whether as a result of tort or a breach of contract, must use reasonable care and diligence to avoid loss or to minimize the

damages resulting. *Hough* v. *Stone* (1925), 21 Ohio App. 444; *Mahoney* v. *General Tire Sales* (1973), 34 Ohio App. 2d 177. Whether the injured party used due diligence to minimize his damages is a question for the jury. *Poor & Co.* v. *Mathis* (1933), 14 Ohio Law Abs. 453.

The appellant sought to introduce testimony to show that his failure to minimize damages was induced by promises from the appellee that it would restore the damaged brick wall of the metal warehouse. The appellant was not prevented from testifying that he had been led to believe that he would ultimately hear more from the appellee as to what was going to be done to rectify the condition. Nor was he prevented from testifying, in spite of the appellee's objection, that he had told the appellee that the wall had to be repaired or replaced in some fashion.

Earlier in the trial, the appellant had been prevented from giving such testimony. But after his counsel explained to the court the purpose of the testimony and after he complied with the court's request for more definite questions, testimony was admitted that the president of the appellee had agreed to do "certain work to the wall."

Thus, the claim by the appellant in this assignment of error that the court refused to allow him the opportunity to testify with respect to his attempts to minimize his damages is not well taken. We overrule Assignment of Error No. III.

*Assignment Of Error No. IV*:

"The Trial Court erred by consistently precluding testimony necessary for appellant to sustain his defense and counterclaim, and by exhibiting a bias in favor of the appellee."

The appellant's brief with respect to this assignment of error summarizes the foregoing assignments of error and adds that "even if this court were to find that each specific instance of exclusion is not, in and of itself, sufficiently prejudicial to require reversal, it is clear that the cumulative result was prejudicial."

While it may appear to the appellant that such was the case, his conclusion was due to his concept of the law

and the unwillingness of the court to adopt his concept. We are of the opinion that the court did its job well, and when counsel explained what he had in mind, and phrased his questions properly, his presentation of the evidence was allowed.

We overrule this assignment of error.

*Judgment reversed.*

Parrino and Krenzler, JJ., concur.