Richard A. CHRISTENSON, Trustee for Cape Trust, Plaintiff and Appellant,

v.

J. Paul JEWKES and Lorna Jewkes, Defendants and Appellees.

No. 19984.

Supreme Court of Utah.

Aug. 25, 1988.

---

Scott W. Cameron, Salt Lake City, for plaintiff and appellant.

H. Hal Visick, Provo, for defendants and appellees.

STEWART, Justice:

The plaintiff, Cape Trust, appeals a judgment entered on a jury verdict in favor of the defendants, J. Paul and Lorna Jewkes, in an action for a deficiency judgment pursuant to Utah Code Ann. § 57–1–32 (1986), following a nonjudicial trust deed sale of undeveloped real property.

The defendants owed $264,000 on a loan made by the plaintiff. The plaintiff commenced this action seeking a deficiency judgment for $109,000, which was owed after a nonjudicial sale of 38.78 acres of undeveloped property which secured the loan. The plaintiff purchased the property at the trustee's sale for $100,000. The complaint alleged that, according to Cape Trust's appraisal, the market value of the property was $155,000 or $4,000 per acre.[1] Subsequent to filing the complaint, the plaintiff made various discovery requests in September and November, 1983, and in February, 1984. The defendants answered the September and November requests; they did not answer the February, 1984 request.

At a January 13, 1984 pretrial conference, the court set the case for trial on March 13, 1984, and ruled that discovery could continue up to ten days before trial. The pretrial order stated that neither unfinished discovery nor failure to discover would be grounds for continuance of the trial date.

On March 8, 1984, five days before trial, the defendants informed the plaintiff that they intended to call as an expert witness Mr. Gerald Higgs, an appraiser who would testify concerning the fair market value of the property, which he had determined to be approximately $685,000, or $17,700 per acre. The defendants' counsel offered to make this witness available to the plaintiff's counsel despite the expiration of the discovery period.

The day before trial, the defendants gave the plaintiff a copy of the appraiser's report, and the plaintiff thereafter asked the defendants for a continuance. Although both the plaintiff's and the defendants' counsel agreed to a continuance, the trial judge refused to grant one. Just before trial the plaintiff renewed the motion for a continuance and, in the alternative, moved to preclude the testimony of Gerald Higgs,

---

1. Section 57–1–32 requires that a complaint seeking a deficiency judgment must state the amount of the indebtedness, the amount for which the property was sold, and the fair market value of the property on the date of the sale.

pursuant to the sanction provisions of Rule 37(b), Utah Rules of Civil Procedure. The court denied the plaintiff's motion to continue and later, during the trial, denied the motion to strike.

At trial, the plaintiff presented the testimony of its expert appraiser, who appraised the value of the land at approximately $4,000 per acre, or $155,000 total. The defendants' expert, Mr. Higgs, after adjusting for the time interval between the date of foreclosure and the date of the appraisal, estimated the fair market value of the land to be approximately $622,775, or $16,070 per acre. Paul Jewkes, one of the defendants, also an expert appraiser, testified that the value of the property was approximately $16,500 per acre, or $639,375 total.

The jury was asked to return a special verdict fixing the fair market value of the property on the date of the foreclosure sale. The jury found the value to be $9,600 per acre, or $372,288 total. Because the value of the property was found to be in excess of the amount of the debt owed, the court entered judgment in favor of the defendants.

After the trial, the plaintiff brought a timely motion for a new trial based on Rule 59(a)(3) of the Utah Rules of Civil Procedure, claiming that it was surprised by the defendants' expert witness, Higgs, who had not been identified in the defendants' answers to the pretrial discovery requests. The motion for a new trial was denied, and this appeal followed.

On appeal, Cape Trust contends that the trial court abused its discretion by denying the continuances which were requested the day before and the day of trial. Cape Trust also contends that the trial court erred in failing to grant a motion for a new trial due to the surprise caused by late notification that Gerald Higgs would testify. Because both of these contentions involve the same issue, i.e., the propriety of the trial court's allowing Higgs to testify, we shall discuss them together.

Trial courts have substantial discretion in deciding whether to grant continuances. Utah R.Civ.P. Rule 40(b). *See also State v. Humpherys,* 707 P.2d 109 (Utah 1985); *Griffiths v. Hammon,* 560 P.2d 1375 (Utah 1977); *Sharp v. Gianulakis,* 63 Utah 249, 225 P. 337 (1924). Similarly, both the granting of, and the refusing to grant, a new trial is a matter left to the discretion of the trial judge, and that decision will be reversed only if the judge has abused that discretion by acting unreasonably. *Batty v. Mitchell,* 575 P.2d 1040, 1043 (Utah 1978); *Smith v. Shreeve,* 551 P.2d 1261 (Utah 1976); *Page v. Utah Home Fire Ins. Co.,* 15 Utah 2d 257, 391 P.2d 290 (1964); *Thorley v. Kolob Fish & Game Club,* 13 Utah 2d 294, 373 P.2d 574 (1962).

Cape Trust contends that it was prejudiced by Higgs' testimony. The jury was concerned with only one issue at trial, the fair market value of the land. Cape Trust asserts that since it did not know of the defendants' expert until five days before trial and did not receive his report until one day before trial, it did not have adequate time to evaluate comparable sales which were used as the basis for the expert's testimony concerning the value of the land. Cape Trust further claims that because it had inadequate time to prepare, it was unable to conduct an adequate cross-examination of the defendants' expert witness.[2]

The argument is unconvincing. Although Cape Trust did not know that Higgs would testify until after the time for discovery closed, the expert was made available to the plaintiff either for an informal interview or for a deposition. The

**2.** Cape Trust does not contend that the defendants' counsel acted in bad faith. The third set of interrogatories submitted by Cape Trust requested, among other things, the identity of every witness the defendants intended to call.

The record indicates that the defendants' counsel provided such information to the plaintiff's counsel as soon as it was determined that Higgs would be a witness for the defendants.

**1378**

plaintiff did not take advantage of either option.

Further, since the only issue in the case was the value of the land and the plaintiff had to prepare and present evidence on that issue anyway, the plaintiff surely was not prejudicially unprepared to conduct an adequate cross-examination. In fact, the record reveals that Cape Trust conducted a very thorough examination of Mr. Higgs. He was questioned closely concerning both his written report and the properties listed as comparable sales in the report. Furthermore, Cape Trust recalled its own expert appraiser as a rebuttal witness. That appraiser testified concerning the properties listed in the Higgs appraisal. Cape Trust's appraiser was familiar with at least five of the comparable sales listed in the Higgs appraisal. In short, the prejudice claimed by Cape Trust is simply not validated by an examination of the record.

Finally, one additional factor tends to support the conclusion that Cape Trust was not prejudiced by the introduction of Higgs' testimony. The jury found the value of the land to be $9,600 per acre. Undisputed testimony was given that the property in question had sold for $9,000 per acre in 1977, some six years before the valuation at issue in this case. The jury therefore had a figure for the value of the land which was independent of the appraisers' reports and could well have been a basis for the verdict. In short, Cape Trust has demonstrated no error and no prejudice.

AFFIRMED.

HALL, C.J., HOWE, Associate C.J., and DURHAM, J., concur.

ZIMMERMAN, Justice (concurring in the result):

I agree that the decision below should be affirmed. However, I join the result reached by the majority only because any error committed by the trial court in unreasonably refusing either to grant a continuance or to exclude the evidence made

known to Christenson immediately before trial in violation of the court's orders has not been shown to have sufficiently undermined the outcome so as to lead me to believe that the error was harmful under the harmless error test of Utah Rule of Civil Procedure 61 and Utah Rule of Evidence 103(a). *See Ashton v. Ashton,* 733 P.2d 147, 154 (Utah 1987); *Redevelopment Agency of Roy v. Jones,* 743 P.2d 1233, 1235 (Utah Ct. App.1987); *see also State v. Knight,* 734 P.2d 913, 919–20 (Utah 1987).