Robert BERRETT, Gerald Argyle, et al., Plaintiffs and Appellants,

v.

DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, INC., Defendant and Appellee.

No. 910215–CA.

Court of Appeals of Utah.

April 3, 1992.

Certiorari Denied July 8, 1992.

Allen K. Young and Randy S. Kester, Springville, for plaintiffs and appellants.

Michael F. Richman and Eric C. Olson, Salt Lake City, for defendant and appellee.

Before BENCH, P.J., and GARFF and JACKSON, JJ.

## OPINION

BENCH, Presiding Judge:

Plaintiffs brought suit against defendant for damages suffered as a result of a landslide in Utah County. Defendant prevailed at trial. Plaintiffs appeal the trial court's decision to preclude one of their expert witnesses from testifying. We reverse and remand for a new trial.

## BACKGROUND

On April 13, 1983, a massive landslide began to move down the hillside in Spanish Fork Canyon, just downriver of the small town of Thistle. The slide progressed into the canyon and blocked the Spanish Fork River. A small lake formed that inundated and destroyed Thistle. The lake was approximately one hundred feet deep and remained for approximately six months until the slide was breached and the water receded. The town was thereafter designated a flood plain, and no one has been allowed to rebuild. Plaintiffs are the former inhabitants of Thistle.

Plaintiffs claim that the landslide was caused by defendant's construction activities at the toe of the slide. In the late 1800s, a predecessor railroad made a cut near the toe of the slide in order to run its tracks up the canyon. Defendant subsequently made a second cut in the early 1900s and a final cut in 1951. Plaintiffs estimate that the total soil removed by these cuts amounted to between 10,000 and 15,000 cubic yards. In essence, plaintiffs claim that but for the cuts made at the toe of the slide, the slide would not have occurred, or at least it would not have been as massive, and their homes would not have been destroyed.

Defendant, on the other hand, asserts that inasmuch as the slide began at the top and moved downward, the landslide would have occurred even if the soil had not been removed from the toe. Defendant therefore claims that its actions were not the cause of the slide.

Plaintiffs commenced this action against defendant in March of 1986. Trial was initially set for August 10, 1987, but was continued and set for February 21, 1989. Another continuance set trial for August 14, 1989. On June 27, 1989, the trial court conducted a pre-trial hearing. Defendant complained that plaintiffs had not provided defendant with their final witness list in response to its interrogatory.[1] The trial court warned plaintiffs about their failure to disclose their witnesses, but did not set a deadline for the final disclosure of witnesses. At the suggestion of defense counsel, the trial court instructed the parties to submit a scheduling order and a pre-trial order within ten days. No scheduling order was submitted, nor do we have any record that one was ever discussed by the parties. No pre-trial order was ever submitted because the parties could not agree on its content.

Defendant's counsel indicated to plaintiffs' counsel in a letter dated July 12, 1989, that defendant expected plaintiffs' final witness list no later than August 1st. Counsel for defendant also sent a proposed pre-trial order to plaintiffs' counsel. The proposed order indicated that the names of all witnesses to be called at trial, not already listed in the proposed pre-trial order, be delivered to opposing counsel and filed with the trial court at least ten days prior to trial.

On July 18th and 19th, following the June 27th hearing, plaintiffs' counsel met with one of their expert witnesses, Dr. Olson, and reviewed reports written about the Thistle slide area. Plaintiffs' counsel agreed with Dr. Olson at that time to attempt to locate one of the authors, Dr. John F. Shroder, a geomorphologist and a

---

1. The record is replete with accusations from both parties of dilatory action by the other side. Suffice it to say that this has been a strongly contested lawsuit and this court need not assess blame for the delays. We do note, however, that part of the delay, as indicated by the trial court, was due to defendant's failure to respond fully to plaintiffs' interrogatories regarding any other slide-related lawsuits against defendant. At the June 27th hearing, plaintiffs were still seeking copies of depositions from defendant regarding a separate slide-related lawsuit.

recognized expert on the Thistle slide area.[2] Plaintiffs' counsel contacted Dr. Shroder by telephone and concluded that his testimony would be beneficial to plaintiffs' case.

On August 1, 1989, plaintiffs provided defendant with their final witness list. Dr. Shroder was included on the list along with six other possible witnesses named for the first time. On August 3, 1989, defendant moved to exclude the new witnesses, including Dr. Shroder. The trial court ordered the exclusion of the testimony of Dr. Shroder and any other witnesses not disclosed on or before July 11, 1989.

The plaintiffs' claim was tried to a jury from August 14th through August 29th of 1989. At the conclusion of trial, the jury rendered a special verdict in favor of defendant. The trial court entered judgment in favor of defendant, dismissing all claims with prejudice. Plaintiffs unsuccessfully moved for a new trial. They now raise several issues on appeal, including whether the trial court abused its discretion in excluding the testimony of expert witness Dr. Shroder. Inasmuch as our resolution of this issue demands a new trial, we do not reach the remaining allegations of error at trial.

## STANDARD OF REVIEW

■ Trial courts have broad discretion in managing the cases assigned to their courts. *See generally* Utah R.Civ.P. 16. We will not interfere with a trial court's case management unless its actions amount to an abuse of discretion. *See Dugan v. Jones,* 615 P.2d 1239, 1244 (Utah 1980). Excluding a witness from testifying is, however, "extreme in nature and ... should be employed only with caution and

restraint." *Plonkey v. Superior,* 106 Ariz. 310, 475 P.2d 492, 494 (1970). *See also Nickey v. Brown,* 7 Ohio App.3d 32, 454 N.E.2d 177 (1982) (exclusion is severe sanction which should be invoked only to enforce willful noncompliance).

If a trial court erroneously excludes a witness, we will reverse if the error was prejudicial to the substantial rights of a party. *See generally* Utah R.Civ.P. 61.

It is not always easy to tell when an error should be regarded as prejudicial.... [If] the error appears to be of such a nature that it can be said with assurance that it was of no material consequence in its effect upon the trial because reasonable minds would have arrived at the same result, regardless of such error, it would be harmless and the granting of a new trial would not be warranted. On the other hand, if it appears to be of sufficient moment that there is a reasonable likelihood that in the absence of such error a different result would have eventuated, the error should be regarded as prejudicial and relief should be granted. Measured by such considerations we assay the possible effect of the error complained of, realizing of course that it is now quite impossible to tell definitely whether the verdict would have been different.

. . . .

[If] we cannot, with any degree of assurance, affirm that the use of such evidence would not have been helpful to the plaintiff, the doubt should be resolved in favor of allowing him to have a full and fair presentation of his cause to the jury.

*Joseph v. W.H. Groves Latter-day Saints Hosp.,* 7 Utah 2d 39, 44, 318 P.2d 330, 333 (1957).[3] *See also Morton Int'l, Inc. v.*

---

**2.** Dr. Shroder prepared his doctoral thesis on the Thistle slide area and published an article discussing the area in 1967.

**3.** Contrary to the implication of the dissent in footnote two, the supreme court did not alter this standard when the same case was appealed a second time in *Joseph v. W.H. Groves Latter-day Saints Hosp.,* 10 Utah 2d 94, 100, 348 P.2d 935, 938 (1960). The case was initially remanded for a new trial with instructions to allow the excluded evidence. The jury again found in

favor of the defendants. A totally new issue was then raised in the second appeal, i.e., whether the trial court erred in not giving a jury instruction on the theory of res ipsa loquitur. The supreme court concluded that the requested instruction was properly denied and that no error was made. Prejudice, therefore, was not even at issue in the second opinion. The supreme court nevertheless stated the following dicta which immediately precedes the dicta quoted by the dissent.

*State Tax Comm'n*, 814 P.2d 581, 584 (Utah 1991) ("an error will be harmless if it is 'sufficiently inconsequential that there is *no* reasonable likelihood that the error affected the outcome of the proceedings'" (quoting *State v. Verde*, 770 P.2d 116, 120 (Utah 1989)) (emphasis added)).

## ANALYSIS

### Timeliness of Disclosure

Plaintiffs contend that inasmuch as there was no court order mandating disclosure by a certain date, they acted reasonably in relying on representations from defendant that August 1, 1989, was an acceptable date for submitting the final witness list. In particular, plaintiffs rely upon the July 12th letter referring to August 1st as the date defendant expected plaintiffs' final witness list. Plaintiffs also assert that their disclosure was reasonable inasmuch as it would have been timely under the proposed pre-trial order prepared by defendant's counsel indicating that new witnesses should be disclosed no later than ten days before trial.

Defendant, on the other hand, contends that despite any representations it may have made, plaintiffs were bound by a deadline set by the trial court. *Cf. Christenson v. Jewkes*, 761 P.2d 1375, 1377 (Utah 1988) (trial court had discretion to deny motion to continue trial despite parties' separate agreement to continue). According to defendant, the trial court set a

deadline for the disclosure of witnesses when it indicated at the June 27th hearing that a pre-trial order was to be prepared within ten days. The trial court itself indicated at the August 3rd hearing on defendant's motion to exclude Dr. Shroder's testimony that it "expected" the witnesses to be listed in the pre-trial order.

A trial court's power to sanction a party for failure to cooperate in discovery comes from rule 37(b)(2) of the Utah Rules of Civil Procedure, which provides that if a party fails to obey an order entered under rule 26(f), the court may prohibit the offending party from introducing designated matters into evidence. Rule 26(f) addresses discovery conferences and directs that following a discovery conference the trial court shall enter an order "establishing a plan and schedule for discovery." As has been recognized by other states,[4] the necessary prerequisite to the imposition of a sanction is an order that "brings the offender squarely within possible contempt of court." *Sexton v. Sugar Creek Packing Co.*, 38 Ohio App.2d 32, 311 N.E.2d 535, 538 (1973) (absent an order, a party may believe that the court has no objection to the information as supplied). *See also Whitehead v. American Motors Sales Corp.*, 801 P.2d 920, 925–26 (Utah 1990) (improper to sanction defendant for not producing test films which did not fall within express terms of order). *Cf.* 8 Charles A. Wright and Arthur R. Miller, *Federal Practice and Pro-*

---

What the parties are entitled to ... is an opportunity for one claiming a grievance ... to present it to a court or jury and to have a fair trial. When this is done, and the verdict and judgment are entered, all presumptions are in favor of validity.

*Id.*

In the first *Joseph* appeal, the supreme court held that the plaintiff did not have a fair opportunity to present his case because of the improper exclusion of the evidence. There was not, therefore, any presumption of validity and any doubt was to be resolved in favor of the appellant. In the second case, the evidence was admitted, thereby creating the presumption of validity. The language quoted in the text, despite its age, remains good law as to when we will presume the validity of the judgment so as to apply the standard relied upon by the dissent.

**4.** *See Clarke v. Sanders*, 363 So.2d 843 (Fla.Dist. Ct.App.1978) (there was no pretrial order re-

quiring the parties to list witnesses on a pretrial statement); *Henderson v. Illinois Cent. Gulf R.R. Co.*, 114 Ill.App.3d 754, 70 Ill.Dec. 595, 449 N.E.2d 942 (1983) (a violation is a condition precedent to the imposition of a sanction); *Lindley v. St. Mary's Hosp.*, 85 Ill.App.3d 559, 40 Ill.Dec. 749, 406 N.E.2d 952 (1980) (no order of court or rule of discovery was contravened); *Fruehauf Trailer Div. v. Thornton*, 174 Ind.App. 1, 366 N.E.2d 21 (1977) (no entry of the pre-trial order was made in the record before the issue of the disputed expert arose); *McHenry v. Hanover Ins. Co.*, 246 So.2d 374, 377 (La.Ct.App.1970) (no formal pre-trial order was entered); *Inner City Wrecking Co. v. Bilsky*, 51 Ohio App.2d 220, 367 N.E.2d 1214 (1977) (before a party may be sanctioned, party must be in default of an order rendered by the trial court which was properly announced and formally entered).

*cedure*, Chap. 6 Sanctions § 2289 (Supp. 1991) (federal rule 37(b)(2) applies "only if there has already been an order").

Contrary to defendant's assertion and the trial court's belief, a review of the record reveals that the trial court did not set a deadline for witness disclosure at the June 27th hearing. While the disclosure of witnesses was discussed at the hearing, no motion was before the trial court and no order was made establishing a deadline. The trial court itself indicated:

> [T]here's nothing before the court except some generalities that you talked about.... I don't know what else to do with you, counsel, except to direct you to the Rules of Civil Procedure and have you follow it in writing, and that's about all I can do. Simply make your motions, I'll rule on them as they are presented. I have nothing before me today to consider.

Given the trial court's express declaration that it was not acting upon any motion at the hearing, the fact that the court may have had an unexpressed expectation that the pre-trial order would contain the final witness list simply did not impose a clear and affirmative deadline on plaintiffs' counsel.

Defendant's counsel even conceded at the hearing that it had not sought the hearing "to get the court to render any orders." He simply was seeking to "make this a kind of status conference so the court knows where things are going." The trial court then admonished the parties to attempt to work things out:

> And if you can't, all I can suggest to you, you've got the rules of civil procedure, and we'll have to play by the book and let the chips fall where they may. I hate to see that. Lots of times we can accomplish a great deal more by cooperation than otherwise. But when that fails then we have a rule to fall back on....
>
> So I'm going to direct that whatever motions you are going to file that, either to compel or any purpose, that we ought to have those filed no later than ten days from today.

The parties failed to present either a scheduling order or a pre-trial order at the end of the ten-day period. Defendant neither filed a motion to compel plaintiffs to disclose their final witness list, nor did the trial court enter any order establishing any deadlines for the final disclosure of witnesses pursuant to the discretion granted to it under rule 26(f).

■ The actions of defendant's own counsel belie a claim that a deadline was set at the June 27th hearing. Defendant's counsel sent a letter on July 12th indicating an August 1st deadline for the final disclosure of witnesses. The proposed pre-trial order prepared by defendant's counsel, while never agreed to by the parties, also provides insight into counsel's understanding of the trial court's instructions at the hearing. The proposed order indicated that if plaintiffs desired to add new witnesses not already listed in the proposed order, then those witnesses could be disclosed up until ten days prior to the trial. Defendant's counsel now seeks to repudiate these representations by simply saying that he did not mean them. Such a repudiation, however, is patently unfair to plaintiffs who relied upon those representations and would be prejudiced by their withdrawal. Defendant, therefore, may not now claim that it had not agreed to an August 1st deadline, nor may it assert that it was prejudiced or surprised by the timely disclosure on August 1st. *See Jansen v. Lichwa*, 13 Ariz.App. 168, 474 P.2d 1020 (1970) (sanction was improper when complaining party consented to continuing discovery until trial); *cf. Whitehead*, 801 P.2d at 925–26 (it was improper to exclude test of Jeep CJ–5 for defendant's purported failure to comply with discovery order when discovery order only required disclosure of tests of Jeep Commandos); *Pratt v. Stein*, 298 Pa.Super. 92, 444 A.2d 674 (1982) (defendant could not complain of prejudice when it requested an expert witness list only 23 days before trial).

Defendant also claims that plaintiffs may not challenge the trial court's preclusion of Dr. Shroder's testimony because they never adequately proffered Dr. Shroder's testi-

mony under rule 103(a)(2) of the Utah Rules of Evidence. The preclusion of Dr. Shroder's testimony, however, was not an evidentiary ruling to which rule 103 would apply; it was a case management decision under the rules of civil procedure. It is clear from the record that the substance of the testimony had no bearing upon the trial court's decision. Therefore, any proffer of the substance of Dr. Shroder's testimony would have neither benefited the trial court nor caused it to "correct" its decision which is the purpose of evidentiary rule 103(a)(2).[5] The failure to proffer therefore does not preclude an appeal of a case management decision.[6]

■ We hold that absent an order creating a judicially imposed deadline,[7] a trial court may not sanction a party by excluding its witnesses under rule 37(b)(2). *See Inner City Wrecking Co. v. Bilsky*, 51 Ohio App.2d 220, 367 N.E.2d 1214, 1218 (1977) (without an order compelling compliance with court rules, the sanction imposed by trial court was beyond its authority). The dissent faults us for only considering the trial court's ruling under rule 37(b)(2). It asserts that the trial court may have excluded Dr. Shroder because plaintiffs proceeded in bad faith. Not only does such a speculative conclusion ignore the fact that there was no evidence that the plaintiffs acted in bad faith,[8] it misses the thrust of this opinion which is that absent an express order of the trial court setting a specific deadline for the disclosure of the final witness list, plaintiffs did not act in bad faith.

No order was entered at the June 27th hearing, nor do we have any indication that any such order was ever entered relating to the August 14th trial date.[9] Defendant

---

**5.** The dissent asserts that no new trial should be ordered because plaintiffs did not object to the exclusion of Dr. Shroder until after the trial. The record, however, clearly indicates that the plaintiffs objected at the August 3rd hearing. The dissent also implies, without any supporting authority, that before trial plaintiffs should have sought a writ of mandamus ordering the trial court to permit Dr. Shroder to testify. Sound judicial policy dictates that we not increase the burden on our already over-burdened system by requiring collateral attacks during a pending case in order to preserve issues for appeal.

**6.** *The dissent asserts that plaintiffs could have,* and should have, used Dr. Shroder as a rebuttal witness. The trial court ruled: "I'm not going to permit you to offer the testimony or bring out *any* witnesses that were not designated or known by the [sic] July the 11th, 1989." (Emphasis added.) Counsel for plaintiffs claims that he understood this to be an absolute bar to using Dr. Shroder, either in the case in chief or in rebuttal. Given the absolute language used, this was a reasonable interpretation. Contrary to the dissent's representation, the trial court never indicated otherwise. The language relied upon by the dissent in footnote three, which it argues left open the possibility of "the testimony" being used in rebuttal, was actually spoken in reference to 73 depositions plaintiffs had requested permission to use. The trial court told plaintiffs they could only use specific passages of the 73 depositions, but that any portion of the depositions could be used in rebuttal if needed to challenge the veracity of any witness. Given the absolute language used by the trial court, we do not fault the plaintiffs for not attempting to use Dr. Shroder in rebuttal.

**7.** The Utah Supreme Court has previously acknowledged that a written order is not statutorily required. *Dugan v. Jones*, 615 P.2d 1239, 1244 (Utah 1980). In this case, however, we do not even have an oral order from the bench. We add our voice to that of the supreme court in encouraging the entry of written orders so as to reduce the type of confusion that has arisen in this case. *Id.*

**8.** Plaintiffs' counsel told the trial court that he made the decision to call Dr. Shroder in mid-July. The trial court clearly believed plaintiffs' counsel should have made the decision earlier, but there is no indication that the trial court believed the plaintiffs acted in bad faith. In fact, the example relied upon by the dissent as an indication of the plaintiffs' bad faith, i.e., the late request to use 73 depositions from another case, was caused by the defendant. The trial court itself expressly blamed defendant, not plaintiffs, for that delay.

**9.** There was a scheduling order entered prior to the February 10, 1989, trial date indicating that witness lists were to be exchanged on November 15, 1988. That date, however, was effectively rendered moot by the continuance of the February trial date to August 1989. The trial court indicated at the June 27th hearing that it had merely anticipated that the earlier schedule regarding the February trial date would be proportionately applied to the August trial date. Such an unexpressed assumption is simply insufficient to create a new and binding schedule. *See Inner City Wrecking Co.*, 367 N.E.2d at 1218 (order must be properly announced and entered before sanctions may be imposed).

even conceded that there was no scheduling order in place when it moved to exclude Dr. Shroder's testimony. By exceeding its procedural authority granted by the rules, the trial court abused its discretion. *Tolman v. Salt Lake County Attorney*, 818 P.2d 23, 27 (Utah App.1991) (stepping outside the arena of discretion is an abuse of discretion).

### Prejudice

■ As to whether the erroneous exclusion of Dr. Shroder's testimony was harmless, we follow the reasoning of the supreme court in *Joseph v. W.H. Groves LatterDay Saints Hospital*, 318 P.2d at 334.

> Some indication of the importance of the error with which we are here concerned is to be found in the fact that counsel thought the matter of sufficient consequence that he objected to [the admission of the evidence]. It strikes the writer as being somewhat inconsistent that counsel now urges that depriving plaintiff of the use of such evidence was merely harmless error. If it is so plain that it would not have helped plaintiff's case, one is led to wonder why counsel made the objection and insisted that it not be used. The obvious answer seems to be that defendant's counsel was actually apprehensive that it may have a substantial effect against his client. Of course, he could not be sure, nor can we.
>
> In view of the fact that there is such substantial doubt that we cannot, with any degree of assurance, affirm that the use of such evidence would not have been helpful to the plaintiff, the doubt should be resolved in favor of allowing him to have a full and fair presentation of his cause to the jury.

At the August 3rd pre-trial hearing, defendant strongly objected to allowing Dr. Shroder to testify at trial. At that time, defendant was aware of Dr. Shroder's article and his geomorphological credentials. Defendant also knew that Dr. Shroder was being offered as a witness to support plaintiffs' contentions that the defendant's actions at the toe of the slide contributed to the slide. At trial, defendant argued that its geomorphology experts were more credible than plaintiffs' geotechnical engineering experts. Dr. Shroder's testimony as a geomorphologist, which would have indicated that the slide was caused by defendant's cuts at the toe of the slide, would have directly contradicted defendant's geomorphologists' conclusion that the slide started at the top.

Given defendant's own emphasis on the type of experts presented, we cannot say that the geomorphological credentials and testimony of Dr. Shroder would not have been helpful to the plaintiffs' case in this battle of expert witnesses. In accordance with the supreme court's direction in *Joseph*, we resolve the doubt in favor of the plaintiffs having an opportunity to fully and fairly present their case and find that the exclusion of Dr. Shroder's geomorphological testimony was prejudicial.[10]

### CONCLUSION

Defendant agreed that plaintiffs could disclose their final witness list on August 1st and therefore may not claim prejudice when plaintiffs disclosed Dr. Shroder on August 1st. Inasmuch as the plaintiffs did not violate any court order compelling discovery of their expert witnesses, the trial court abused its discretion by excluding the testimony of Dr. Shroder. We cannot with any degree of assurance conclude that the improper exclusion of Dr. Shroder's testi-

---

10. We note in response to the dissent that the difference in our views as to whether there is prejudice in this case appears to arise from the fact that the dissent relies upon cases where the disputed evidence was erroneously admitted, rather than excluded. When evidence is erroneously admitted, it is possible for a reviewing court to excise the offending evidence and evaluate the remaining uncontested evidence so as to determine whether the properly admitted evidence is such that the prevailing party would have prevailed anyway. Where evidence is excluded, however, it is difficult, if not impossible, to conclude on review that the missing evidence would not have made a difference to the jury. The jury has never had the opportunity to hear the excluded evidence and weigh it against that which is admitted. The presumption of validity relied upon by the dissent is therefore absent when evidence is erroneously excluded.

mony did not affect the outcome of the case.

The judgment of the trial court is therefore reversed and the case is remanded for a new trial.

GARFF, J., concurs.

JACKSON, Judge, dissenting:

Because I do not think the plaintiffs have met their burden of establishing substantial prejudice, I respectfully dissent from the majority's decision to reverse and remand.

Even if I were persuaded that the trial court's action in excluding Dr. Shroder from testifying was an abuse of discretion,[1] the plaintiffs still must establish that there is a reasonable likelihood that the result at trial would have been different without his testimony. *Batt v. State*, 28 Utah 2d 417, 503 P.2d 855, 859 (1972); *Bowden v. Denver & Rio Grande Western R.R.*, 3 Utah 2d 444, 286 P.2d 240, 244 (1955). "No error in either the admission or the exclusion of evidence ... is ground for granting a new

trial or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." Utah R.Civ.P. 61. Absent any showing by plaintiffs that the outcome would have differed, every reasonable presumption as to the validity of the verdict below must be taken as true upon appeal. *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 301 (Utah 1982). The majority opinion ignores the language of Rule 61 and the cases which have interpreted that rule as placing the burden on the complaining party to establish substantial prejudice, and instead relies upon a 1957 case for the proposition that if we cannot decide that there was prejudice, we must reverse the decision of the trial court and order a new trial.[2]

On appeal, plaintiffs argue the jury was deprived of hearing relevant information because the trial court excluded Shroder's testimony. Plaintiffs further allege that Shroder should have, at a minimum, been allowed to testify as a rebuttal witness.[3] Plaintiffs' only mention of the prejudice

---

1. However, the majority's reliance upon Rule 37(b) of the Utah Rules of Civil Procedure in reaching this conclusion is misplaced. I agree with the majority that the trial court had not entered an order regarding discovery, and that therefore, no discovery order was violated. *See Henderson v. Illinois Cent. Gulf R.R.*, 114 Ill. App.3d 754, 70 Ill.Dec. 595, 597, 449 N.E.2d 942, 944 (1983) (no order for discovery so court could not sanction for discovery violation). But the trial court did not cite Rule 37(b) as justification for excluding the Shroder testimony. The trial court stated that because plaintiffs admitted having known about the witnesses "a long time ago" and had failed to designate who they were, those witnesses would be excluded from testifying.

It is just as conceivable that the trial court decided to exclude the testimony because it felt plaintiffs had consistently proceeded in bad faith in preparing for trial. On August 1, fourteen days before the twelve-day trial was to commence, plaintiffs disclosed they intended to call an additional seventy-eight witnesses (through live testimony or deposition). The trial court excluded the testimony of only three of these witnesses. The trial court then ordered plaintiffs to designate what portions of the 75 depositions they intended to read, but did not exclude this testimony.

2. *Joseph v. W.H. Groves Latter-day Saints Hosp.*, 7 Utah 2d 39, 318 P.2d 330, 333 (1957), upon

which the majority opinion relies, held that because the trial court allowed certain notes to be admitted into evidence, it should also have allowed counsel to "elabor[ate] for the benefit of those uninitiated in the mysteries of medical terminology." Instead, the trial court had sustained defendant's objection to allowing plaintiff to read and use the notes in his argument. The case was remanded for a new trial, and the jury again returned a verdict of no cause of action. *Joseph v. W.H. Groves Latter-day Saints Hosp.*, 10 Utah 2d 94, 348 P.2d 935, 936 (1960). When the case was appealed for a second time, the supreme court stated firmly that "[t]he burden is upon the appellant not only to show that there was error, but that it was prejudicial to the extent that there is a reasonable likelihood that in its absence there would have been a different result." *Id.* 348 P.2d at 938. This is the same burden which I recognize as being on plaintiffs in the instant case.

3. Plaintiffs offered no rebuttal witnesses at trial and the record does not support plaintiffs' contention that they were precluded from introducing Shroder as a rebuttal witness. The trial court in fact, at the August 3rd hearing, told counsel for plaintiffs that while the excluded evidence could not be used as part of the case-in-chief, the court was not foreclosing the possibility of using the testimony "to impeach or for some other purpose, if there is a dispute in testimony."

suffered by them is the mere assertion that Shroder's testimony was "crucial to plaintiffs' case." Plaintiffs did not petition for an extraordinary writ and chose instead to take their chances and proceed to trial. They made no attempt to offer the Shroder testimony on rebuttal.[4] It was only after they lost at trial, that plaintiff objected to the exclusion of the Shroder testimony.

Plaintiffs in this case have failed to provide this court with any basis for declaring that the trial court's exclusion of Shroder's testimony was prejudicial to the extent that without the exclusion, there is a reasonable likelihood that the outcome of the trial would have been different.[5] Because plaintiffs fail to meet this burden, their contention is without merit. *See Ashton,* 733 P.2d at 154. I would affirm the trial court, and thus dissent from the majority's decision to reverse the trial court and remand for a new trial.

---

**4.** *Plonkey,* the Arizona case cited by the majority opinion, involved facts much different than those before us. There, the plaintiff, whose witness had been excluded by the trial court for similar reasons, did petition for review of that decision *before the trial commenced,* utilizing a writ of mandamus. We do not suggest that had the plaintiffs petitioned the trial court for a similar writ, a new trial would then be appropriate. We simply point out that plaintiffs did not exhaust all remedies available to them, nor did they attempt to introduce Shroder's testimony on rebuttal.

Further, the trial court's ruling in this case could not have been as unexpected as plaintiffs would have us believe. At a hearing on June 27, the trial court warned the parties that if they did not disclose their witnesses, it would make an order that they could not testify.

**5.** *See Christenson v. Jewkes,* 761 P.2d 1375, 1378 (Utah 1988) (Zimmermann, J. concurring) (any error by trial court in excluding evidence was not shown to have "sufficiently undermined the outcome"); *Redevelopment Agency v. Jones,* 743 P.2d 1233, 1235 (Utah App.1987) (even if it is determined on appeal that a trial court erred,

"we must also consider whether or not the error was prejudicial"); *Ashton v. Ashton,* 733 P.2d 147, 154 (Utah 1987) (appellant must establish "not only that an error occurred, but that it was substantial and prejudicial in that appellant was deprived in some manner of a full and fair consideration of the disputed issues by the jury"); *Onyeabor v. Pro Roofing, Inc.,* 787 P.2d 525, 529 (Utah App.1990) ("Even if we assume that the admission of [the expert's] testimony constituted error, plaintiff fails to demonstrate how he was prejudiced. Any error in the admission of evidence must be disregarded unless it substantially affects the substantial rights of the parties."); *cf. Whitehead v. American Motors Sales Corp.,* 801 P.2d 920, 928 (Utah 1990) (cumulative effect of trial court's errors in excluding evidence substantially prejudiced defendants' rights); *Kott v. City of Phoenix,* 158 Ariz. 415, 763 P.2d 235 (1988) (trial court's decision to allow officer to testify who had been unidentified to other side before trial was reversible error since admission of evidence was erroneous and error not harmless).